* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. American Protection Insurance Company is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage is $473.68.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff alleges that she developed bilateral carpal tunnel syndrome on or about June 2, 2003 while working for defendant-employer in Rocky Mount, North Carolina. Plaintiff began her employment with defendant-employer, a pharmaceutical manufacturer, as a temporary employee in 1986, and began working full-time in 1987.
2. Until approximately January 2001, plaintiff worked on Line 1, which involved standing to perform duties in front of a moving conveyor belt. In January 2001, plaintiff was moved from Line 1 to the "rework line" because of chest pain, not due to any complaints of hand pain.
3. As a production operator on the rework line, plaintiff's duties included several different tasks that are depicted on a job video that was introduced into evidence before the Deputy Commissioner. These duties included performing inspection tasks, such as looking for defects and glass particles in vials, and checking labels for cosmetic defects. Other duties included using a knife to remove products from pre-packed boxes, placing vials into trays, and re-labeling vials. While plaintiff used her fingers and hands to perform her job, she had discretion over the rate and manner in which she performed the duties.
4. Plaintiff first sought medical treatment on August 22, 2002, when she presented to her family doctor and was diagnosed with right carpal tunnel syndrome. She did not report this diagnosis to defendant-employer, but continued working on the rework line. Plaintiff was primarily followed by the doctors at Rocky Mount Family Medical Center until she reported her hand symptoms to defendant-employer in late May 2003, at which time she went out of work.
5. After plaintiff went out of work, she underwent MRI and CT scans and was eventually referred to Dr. Wallace F. Andrew of Raleigh Orthopedic Clinic on July 28, 2003. Dr. Andrew reviewed the scans and determined that plaintiff was suffering from multiple cystic lesions in the carpal bones of the right wrist, as well as bilateral carpal tunnel syndrome, right greater than left. Dr. Andrew was unable to discern which of these problems caused plaintiff's current symptoms, and he felt additional tests, including biopsies, were necessary.
6. Plaintiff did not return to Dr. Andrew, and instead presented to Dr. Gilbert G. Whitmer of Carolina Regional Orthopedics on August 12, 2003. Dr. Whitmer did not order the additional testing suggested by Dr. Andrew, but did schedule and perform right carpal tunnel surgery on August 25, 2003. Thereafter, Dr. Whitmer performed left carpal tunnel surgery on plaintiff on October 6, 2003.
7. On December 6, 2004, Dr. Robert Martin, also of Carolina Regional Orthopedics, examined plaintiff and reviewed her medical records. Dr. Martin took over plaintiff's care on an interim basis after Dr. Whitmer left the practice.
8. At his deposition, Dr. Andrew testified that plaintiff's job placed her at a "slight increased risk" of developing carpal tunnel syndrome. However, after reviewing the videotape illustrating plaintiff's job duties on the rework line, Dr. Andrew testified that plaintiff's job was not a significant contributing factor in her development of carpal tunnel syndrome. Dr. Martin testified at his deposition that plaintiff's job did not place her at an increased risk of developing carpal tunnel syndrome. No medical expert testified or provided an opinion that plaintiff's job duties caused or were a significant contributing factor in the development of her carpal tunnel syndrome.
9. Based upon the greater weight of the medical evidence of record, the Full Commission finds that plaintiff failed to meet her burden of establishing that her job duties caused or significantly contributed to the development of her bilateral carpal tunnel syndrome. Further, the greater weight of the medical evidence fails to show that plaintiff's employment placed her at an increased risk of developing carpal tunnel syndrome when compared to the general public.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed her to a greater risk of contracting the disease than the public generally. Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the development of the disease. Hardin v.Motor Panels, Inc., 136 N.C. App. 351, 524 S.E.2d 368 (2000) (citing Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983).
2. In the present case, plaintiff failed to prove by the greater weight of the evidence that her employment caused or was a significant contributing factor in her development of carpal tunnel syndrome, that the carpal tunnel syndrome was characteristic of or peculiar to her employment, or that she was at an increased risk of developing this condition due to her work. Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101
(1981).
3. Therefore, plaintiff did not contract a compensable occupational disease within the meaning of the law. N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This 11th day of October, 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER